W. B. CRAIG et al.

v.

DAVID C. SOUTHARD et al.

Filed at Ottawa June 13, 1896.

1. APPEALS AND ERRORS—*when decree sustaining a will will not be disturbed.* A decree sustaining a will contested on the ground of mental incapacity will not be disturbed, where substantial justice has been done and the same conclusion has been arrived at by two juries after protracted and expensive trials, although the rulings of the trial court were not in every instance correct.

2. SAME—*when decree will not be reversed for exclusion of evidence.* A decree will not be reversed for the erroneous exclusion of evidence which is finally given in answer to other questions, or which is of such a character that it could not have changed the result.

3. INSTRUCTIONS—*that testator is presumed of sound mind and memory —when not error.* An instruction upon a will contest that the testator is presumed to have been of sound mind and memory at the time of executing the will is proper, where instructions have been given that it is incumbent upon the proponents of the will to make a *prima facie* case of due execution and mental capacity, and such proof has been made.

APPEAL from the Circuit Court of Grundy county; the Hon. CHARLES BLANCHARD, Judge, presiding.

S. C. STOUGH, and BUCKINGHAM & SHIPLEY, for appellants:

The sanity of the testator at the time of the execution of the will is an affirmative fact, to be established by the proponents of the instrument, who hold the open and the close before the jury. *Rigg* v. *Wilton*, 13 Ill. 15.

In a bill of this character it is necessary the will must be probated anew, as though it was for the first time presented for proof. *Potter* v. *Potter*, 41 Ill. 80; *Moyer* v. *Swygart*, 125 id. 262; *Trish* v. *Newell*, 62 id. 196; *Tate* v. *Tate*, 89 id. 42.

The presumption that the person making a will was, at the time, sane, is not the same as in the case of the making of other instruments, but the sanity must be

proved.   *Gerrish* v. *Nason*, 22 Me. 438; *Cilley* v. *Cilley*, 34 id. 162.

Proponents, before resting, are bound to make a *prima facia* case on the averment of soundness of mind, and the necessity of making such a case on that point involves the production of some other evidence of testamentary capacity than is furnished by the legal presumption. *Aiken* v. *Weckerly*, 19 Mich. 482; *Kempsey* v. *McGinniss*, 21 id. 123; *Renn* v. *Lamon*, 33 Texas, 760; *Tingley* v. *Cowgill*, 48 Mo. 291; *Comstock* v. *Hadlyme*, 8 Conn. 261.

E. L. CLOVER, and W. E. DAVID, for appellees.

Per CURIAM: The appellants, William B. Craig and others, brought their bill in equity in the circuit court of Grundy county to contest the last will, and the probate thereof, of David Craig, deceased, alleging that the testator was of unsound mind and that the will was obtained by undue influence. Upon an issue made up under the statute, a trial was had before the court and jury, and a verdict and decree rendered that the instrument in question was the last will and testament of the deceased. That decree was reversed by this court because of the erroneous rulings of the trial court in admitting and excluding evidence offered on the trial. (*Craig* v. *Southard*, 148 Ill. 37.) A second trial in the court below resulted as did the first, and this appeal is prosecuted by the contestants to reverse the decree sustaining the will and dismissing the bill.

There was no evidence of undue influence, and the real contention was and is that the testator, at the time he made the will in question, was of unsound mind, and, by reason thereof, incapable of making a valid will.

It appears that when the will was made, in January, 1889, the testator was upwards of eighty-two years of age, was somewhat infirm, but exhibited no marked decline in his mental faculties. He died in June, 1890, from the effects of a complication of diseases, as related by

his physicians, who testified that he was affected with Bright's disease and paresis. During the last few years of his life his eyesight and hearing had become so far impaired that it was with difficulty that he recognized his acquaintances or understood remarks addressed to him, and this fact would seem to account for the opinions of some of the witnesses who testified that he was not competent to transact ordinary business. On the last trial the testimony took a wide range, covering a period of more than forty years, and relating to many events which took place in Ohio before the testator moved to this State, the purpose of contestants appearing to be to prove that the testator had never been competent to transact his ordinary business affairs, but had always relied and depended upon his brothers and other relations before his marriage, and afterward upon his wife. Testimony was given that about twenty-five years before he made his will he twice tried to commit suicide by taking poison, giving no substantial reason for the act except that he was afraid he would have to go to the poor-house; that while he had property enough to support his wife he thought he did not have enough for both, and that she would be better off without him. It appears, however, that by his industry, economy and attention to his business affairs he accumulated, with the assistance of his wife, substantially all the property in dispute, which consists of a farm of 160 acres of land in Grundy county and a few thousand dollars in money. Upwards of eighty witnesses were examined in the case, and, as is usual in such cases, there were wide differences of opinion as to his mental competency. Many witnesses testified to business transactions with him of different kinds, such as buying and selling farm products, leasing land, loaning money, and other transactions, and that he was fully competent to transact ordinary business. The testator had made a previous will, by which he had left all his property to his wife for her life, with remainder

to appellee, Southard, except a legacy of $500 to a niece for services which she had rendered. After his wife's death he made the will here in dispute and carried out his previously cherished purpose of giving his property to Southard. Before making his last will he made provision for the payment to his niece for the services she had rendered. Southard was his nephew and bore his name. Deceased left no children, and appellants are his nephews and nieces. Shortly after making his will he went to Indiana to reside with Southard and his family, and did reside with them there, and afterwards, on their removal to Illinois, resided with them here until his death.

We do not feel called upon here to review the evidence at length, but we have given it careful consideration, and have arrived at the conclusion that the decree rendered in the trial court is correct and ought to stand. The same conclusion has been arrived at by two juries after protracted and expensive trials, and we are not disposed, in view of the evidence in this record, to set aside the verdict again where it is plain to be seen that substantial justice has been done, although it may appear that the rulings of the trial court were not in every instance correct. We would have been better satisfied had the trial court limited the scope of the inquiry to a briefer period of the lifetime of the testator, but had ruled more liberally respecting the admission of offered testimony concerning the mental condition of the testator within that time. It must be admitted that some of the questions, substantially the same as those which on the previous appeal were held to have been erroneously excluded, were again excluded on the last trial, and we would be compelled to reverse the judgment again did it not further appear that in most instances the testimony called for by the questions excluded was given in answer to other questions, or was of such a character that, in view of the other evidence in the record, it could not

have changed the result. Nothing more need be said on this phase of the case than to refer to what was said in the former opinion. (148 Ill. on pp. 44, 45.)

It is also insisted that the trial court erred in refusing to allow two physicians, called by appellants, to answer certain hypothetical questions propounded to them, but we think no error was committed in this regard.

It is further contended that the court erred in giving to the jury the following instruction:

4. "The court instructs the jury that the law presumes, and it is your duty to presume, that every man who has arrived at the years of discretion is of sound mind and memory, and capable of transacting ordinary business, and capable of disposing of his property by will or otherwise, until the contrary is shown; and the court instructs you that, in the first instance, it is your duty to hold that David Craig, at the time he executed the will offered in evidence, was of sound mind and memory, and to so hold until you believe, by the preponderance of the evidence, that he was otherwise."

The court had already instructed the jury that it was incumbent on the proponents of the will to make out a *prima facie* case, in the first instance, by proper proof of the due execution of the will by the testator, and of his mental capacity, as required by the statute, and there was no question in the case that such proof was not made. The burden of proof was then upon the contestants to prove the allegations of their bill, by a preponderance of the evidence, that the testator was mentally incompetent, and the proponents were entitled to the legal presumption of sanity, as stated in the instruction. As said in *Carpenter* v. *Calvert*, 83 Ill. 62, "in weighing the conflicting proofs the party supporting the will is entitled to the benefit of this presumption." (See, also, *Wilbur* v. *Wilbur*, 129 Ill. 392, where the same question was considered.) The instruction was not erroneous.

Other criticisms are made upon other instructions, but we do not find that any error was committed, as contended by counsel. The jury were fully and fairly instructed by the court as to the law applicable to the facts adduced on both sides of the controversy, and no sufficient reason is shown why the decree should not be affirmed.

*Decree affirmed.*