### In re ANDERSON'S ESTATE.
### MORRISON v. LINN.

No. 19361.  Opinion Filed Oct. 15, 1929.

Rehearing Denied March 25, 1930.

Shell Bassett, for plaintiff in error.

Fred M. Carter, Linn & Spradling, and Thos. G. Skinner, for defendant in error.

REID, C. Walter Anderson was a three-quarter blood enrolled Creek Indian, and about 30 years of age when he died on January 18, 1927. He had made three wills, the principal beneficiaries named in them and their dates being: Sally Morrison, February 2, 1921; Conn Linn, January 31, 1924; J. L. Moore, August 5, 1926.

On January 24, 1927, Conn Linn filed his petition in the county court of Tulsa county asking that the will of January 31, 1924, be probated as the last will of the deceased. Thereafter Andrew Anderson, a brother of the decedent, one Dave Bruner Anderson, Sallie Morrison, an aunt, and J. L. Moore filed contests against the probate of the Linn will. And in due course, J. L. Moore and Sallie Morrison each filed their petition in that court to have probated the wills of Walter Anderson in which they were named the chief beneficiaries. The causes were consolidated and heard by a special judge agreed on, upon the petition to probate the respective wills and the contests of the adverse parties. On January 8, 1927, a judgment was rendered holding that the will propounded by Conn Linn, executed January 31, 1924, was the last will of the deceased, and admitted the same to probate and denied probate of the wills offered by Moore and Sallie Morrison.

Each of the parties adversely affected by the judgment, prosecuted an appeal to the district court, except the contestant Dave Bruner Anderson.

Upon a trial of the consolidated proceeding in the district court findings were made on the issues, and judgment was entered admittting the Linn will to probate, and denying probate of the wills propounded by Moore and Sally Morrison, respectively, and in all things approved the judgment of the county court.

From the foregoing judgment Sallie Morrison alone appealed. And the only question here presented is whether or not the will of January 31, 1924, naming Linn as the principal beneficiary, is a valid will and entitled to probate.

As showing her right to contest the will made to Linn, Sallie Morrison alleged that

she was beneficiary under a will made by the deceased on February 2, 1921, and had filed petition for probate thereof. And for attack upon the Linn will, she alleged:

"Contestant says that the will presented for probate by Conn Linn, made by Walter Anderson on January 31, 1924, was obtained by Conn Linn by undue influence, suggestion, and persuasion on the part of the said Conn Linn; that Conn Linn, at the time of the making of said will, was, and for a long time prior thereto, had been the attorney of Walter Anderson, and had acquired great influence over Walter Anderson by reason of such relationship; that Walter Anderson, at the time said will was made, was and for sometime theretofore he had been addicted to the use of narcotic drugs; that the use of said drugs had become so habitual and so frequent that the mind of Walter Anderson had been weakened, and his mental condition so impaired that he was unable to make and execute a valid will at that time; that at said time he was very easily influenced, had no idea of the value of property, and would do anything to obtain narcotics when the craving for such narcotic was upon him, and when under the influence of such narcotic, he would part with his property or take action regarding it without reason, and without regard to its value, upon the mere suggestion that such action be taken, and this contestant avers that the said Conn Linn well knew the condition of Walter Anderson at that time, and procured the execution of said will of January 31, 1924, with knowledge that Walter Anderson at that time was without mental capacity to make a will."

It is evident that the contestant sought to defeat the will on the ground that the testator was not of sound mind as required by section 11221, C. O. S. 1921, and also on the further ground that the will was procured by undue influence, mentioned as one of the grounds on which a will may be denied probate, in section 11223, C. O. S., 1921; the other allegations of the pleading going as inducements to the two main facts charged.

In the contestant's brief she groups her several assignments of error into two questions, the first being stated as follows:

"Was the burden cast upon Sallie Morrison in this case to prove, by a preponderance of the evidence, that the Linn will was invalid either by reason of undue influence on the part of Linn, or by reason of the mental incapacity of Walter Anderson?"

The general rule answering the foregoing question has been stated by this court in the case of In re Will of Son-se-gra, 78 Okla. 213, 189 Pac. 865, in the following language:

"The burden of proof in the trial of a contest of the probate of a will is, first, upon the proponents of the will to make a prima facie showing entitling the will to probate; the burden then shifts to the contestants to establish the issues presented by their contest. Section 6210, Rev. Laws 1910; Cartwright v. Holcomb, 21 Okla. 548, 97 Pac. 385; In re Blackfeather's Estate, supra; In re MacCrellish's Estate, 167 Cal. 711, 141 Pac. 257, L. R. A. 1915A, 443; Estate of LaTour, 140 Cal. 414, 73 Pac. 1070, 74 Pac. 441; Jones on Evidence, sec. 189; In re Van Alstine's Estate, 26 Utah, 193, 72 Pac. 942."

And, applying the foregoing general rule to the question where the burden of proof rested on the particular issue as to whether the testator had sufficient mental capacity to make the will, we find that this court, in the case of In re Blackfeather's Estate, 54 Okla. 1, 153 Pac. 839, has said:

"A presumption of sanity goes with everyone and the burden of proving unsoundness of mind in a will contest rests on the contestant."

This holding was approved in the case of McClure v. Kerchner, 107 Okla. 28, 229 Pac. 589.

And in the case of In re Estate of Wahken-tah-he-um-pah, 108 Ok'a. 1, 232 Pac. 46, where it was also said.

"The time of the making and execution of the will is the point of the time from which the mental capacity of testator must be determined. See 40 Cyc. 998, and authorities cited."

The evidence in this case shows that for sometime prior thereto, and at the time the will in question was executed, the proponent was the attorney of the testator and regarded by him as his close friend. We find the evidence sufficient to show a confidential relation. It therefore became the duty of the proponent to show that the will was not obtained by undue influence. However, notwithstanding the burden so placed on the proponent, if, by all the evidence in the case, the burden was overcome, then the will was entitled to probate, if not invalid for some other season. Bromley's Estate (Mich.) 71 N. W. 523. For certainly there is no rule of law which prevents a party from receiving bequests under, or even being the sole beneficiary, in a will made by one to whom he stands in a confidential relation.

By the other assignment of error presented in contestant's brief, it is contended, in substance, that the judgment is not sustained by the evidence.

We have many times said that a will

contest is a case of equitable cognizance, and that, on appeal, this court will examine the whole record and weigh the evidence; but the findings and judgment of the district court will not be disturbed, unless such findings and judgment are against the clear weight of the evidence. In re Will of Sonse-gra, 78 Okla. 213, 189 Pac. 865; In re Will of Me-hon-kah, 78 Okla. 214, 189 Pac. 867; Carson, Adm'r, v. Mills, 78 Okla. 214, 189 Pac. 867; In re Klufa's Estate, 78 Okla. 13, 188 Pac. 331; Hunter v. Battiest, 79 Okla. 248, 192 Pac. 575; Wolber v. Rose, 92 Okla. 100, 218 Pac. 323; In re Wah-kontah-he-um-pah's Estate, 109 Okla. 126, 234 Pac. 210.

In view of the fact that the foundation of the attack on the will appears to rest mostly upon the proposition that the maker of it was a drug addict prior to and at the time of its execution, and had been thereby rendered incapable of making a will, let us see what the law is by which we shall determine whether the testator in this case had the required mental capacity.

From our examination of many texts and decisions of different courts on the question, we find the rule well stated in Page on Wills (2nd Ed.) sec. 159, where the writer has this to say:

"The general principles of testamentary capacity apply in cases where the testator is affected by the use of alcohol or drugs. In such case a person may have the capacity which the law requires for making a will, if, in spite of the use of alcohol or drugs, he has sufficient mind and memory to understand the nature and extent of his property, the proper objects of his bounty, and the nature of the testamentary act. If his mind is so affected by alcohol or drugs that it lacks these requisites, he has not such capacity. One who is going under the influence of opiates for an operation lacks mental capacity if he does not understand the nature of the transaction even if he is able to read the will aloud."

"As in other cases, the question to be determined is solely that of the capacity of the testator at the time of making his will. The fact that he was habitually intoxicated or under the influence of drugs does not render his will invalid, if he had the requisite understanding at the time that he made it."

The foregoing text finds support in the following decisions wherein the wills of drug addicts were contested: Slingloff v. Bruner (Ill.) 51 N. E. 772; In re Walz's Estate (Mich.) 183 N. W. 754; In re Gilham's Will (N. J.) 52 Atl. 690; Frost v. Wheeler (N. J.) 12 Atl. 612; Von de Veld v. Judy (Mo.) 44 S. W. 1117.

And, as we have seen that the same principles will be applied in determining whether habitual intoxication of the testator will invalidate a will, we call attention to the following cases:

In re Miller's Estate (Pa.) 36 Atl. 139; In re Heaton's Will (N. Y.) 120 N. E. 83; In re Mannion's Estate (N. J.) 95 Atl. 988; Moriarity v. Palmer (Ill.) 121 N. E. 219.

The substance of the whole applicable rule, as we have found it in the text-books and decisions, is made to turn upon the mental status or capacity of the testator at the time he made the will; the inquiry being, Did he, notwithstanding his use of drugs, have sufficient mind and memory to understand the nature and extent of his property, the proper objects of his bounty, and the nature of his testamentary act? If he did, the will was entitled to probate, unless it was procured by undue influence.

It is not necesary to go further than the decisions of this court to find what is meant by undue influence as applied to a person in the execution of a will.

The rule for sometime established by this court is well stated in the case of In re Swartz's Will, 79 Okla. 191, 192 Pac. 203:

"Undue influence such as will invalidate a will must be something which destroys the free agency of the testator at the time when the instrument is made, and which, in effect, substitutes the will of another for that of the testator. It is not sufficient that the testator was influenced by the beneficiaries in the ordinary affairs of life, or that he was surrounded by them and in confidential relations with them at the time of its execution. Mere general influence, not brought to bear on the testamentary act, is not undue influence; but, in order to constitute undue influence, it must be used directly to procure the will and must amount to coercion, destroying the free agency of the testator. Mere suspicion that undue influence was brought to bear is not sufficient to justify the setting aside of the will."

And in these cases we have announced or followed the same doctrine: In re Cook's Estate, 71 Okla. 94, 175 Pac. 509; Kindt v. Parmenter, 83 Okla. 116, 200 Pac. 706; Nelson v. York, 87 Okla. 210, 209 Pac. 425.

And:

"The unsoundness of mind, or undue influence, which will defeat a will, must have been operative at the time the will was executed. Reichenbach v. Ruddach (Pa.) 18 Atl. 432.

We think that what was said in the case of Reed v. Reed, 114 Mass. 372, where an action was brought to set aside a conveyance as having been obtained by fraud and un-

due influence, illustrates the reasons why it is unnecessary for us to here fully set out and review the evidence. The court said:

"The decision of the present case turns mainly upon the comparative weight to be given to the testimony of the respective parties, who were examined in person at the original hearing; and upon a careful examination of the whole evidence, we see no reason to reverse the decree. In cases of this kind, which depend upon their own peculiar circumstances, and can be of no value as precedents, it is not the practice of the court to discuss the evidence in detail in the opinion. Mann v. Rock Island Bank, 11 Wall. 650; Emery v. Parrott, 107 Mass. 95; Ward v. Salem Street Railway, 108 Mass. 332.

We have carefully examined the evidence. And, upon the particular issues involved, the substance may be stated as showing: That for several years prior to making this will, the testator was addicted to the use of narcotics of various kinds, and this use continued until his death, about three years after the will was made. Several witnesses introduced by the contestant, including two physicians, testified as to his conduct and habits during this time. Some of them had the opinion that, on account of this excessive use of drugs, he would not have had sufficient mental capacity to understand the full nature of his acts so as to make an intelligent disposition of his property. But some of these witnesses thought that at times he was normal and capable of properly transacting his affairs. On the other hand, there was evidence introduced by the proponent tending to show that he was fairly well educated, rather intelligent, capable of knowing what he wanted to do with his property, and could fully understand the nature and consequences of his act in making a will.

The will was prepared by M. L. Spradling, an attorney, at the request of the testator, and after direction by him that he wanted Linn to have his property. It was witnessed by Spradling and Woodson E. Norvell, and acknowledged before and approved by D. F. Gore, United States Commissioner. And while the approval of Gore contributed nothing to the validity of the will, yet his testimony to the effect that he privately discussed the matter with the testator, and that the testator knew and fully understood what he was doing, and told witnesses that the will disposed of his property the way he wanted it to go, was material evidence. Spradling and Norvell each testified that Anderson said he was giving his property to Linn because he regarded Linn as his best friend; and that in their opinion he fully understood the matter and had mental capacity to make a will. Gore and the witnesses to the will each knew testator before that time.

What the court said in the case of In re Walz's Estate (Mich.) 183 N. W. 754, seems to apply to the situation presented by the testimony in this case, and we quote from it as follows:

"In contest of will on ground of mental incompetency, it was not sufficient to show that testatrix was addicted to the drug habit, without showing that she was incapacitated mentally thereby in fact at the time the will was made."

We have concluded that the finding of the trial court that the decedent had testamentary capacity is here sustained by the evidence.

As to the question of undue influence: We have said that the relation of attorney and client existed between Anderson and Linn at the time the will was made, and that the testator also regarded Linn as his friend, thereby establishing a confidential relation. The will was not drawn by Linn, but by Spradling, at the request of the testator, who had independent advice throughout its preparation and execution. Upon the whole evidence, the finding that the will was not procured by undue influence is also here sustained.

It appears that the decedent left no dependents and that his adult brother, Andrew Anderson, was his only heir, and that his estate consisted of 80 acres of agricultural lands.

Upon weighing all the evidence submitted upon the issues, we find that the judgment of the trial court is not clearly against the weight of the evidence, and should be sustained. The judgment is affirmed.

BENNETT, TEEHEE, FOSTER, and LEACH, Commissioners, concur.

By the Court: It is so ordered.