In re ESTATE of Minnie S. DYER, Deceased.

Reba NELSON, Johnnie Mae Woods and Travis A. Dyer, Plaintiffs in Error,

v.

Mildred J. KELLER and Hollis Arnett, Administrator C. T. A., Defendants in Error.

No. 36246.

Supreme Court of Oklahoma.

March 8, 1955.

As Amended April 12, 1955.

Rehearing Denied April 19, 1955.

Appeal from the District Court of Greer County; W. P. Keen, Judge.

Appeal from order of District Court upon trial de novo of contest of a will affirming order of County Court admitting will to probate. Affirmed.

Bledsoe, Nicklas & Chrisman, Lawton, for plaintiffs in error.

Yonne Pendleton McDaniel, Mangum, for defendants in error.

ARNOLD, Justice.

Mildred J. Keller offered for probate in the County Court of Greer County an instrument purporting to be the last will and testament of Minnie S. Dyer, deceased, and asked that administrator with the will annexed be appointed. Two daughters of said deceased filed contest of the will alleging undue influence and that the will was not executed and attested according to law. Upon hearing the will was admitted to probate and administrator with the will

annexed appointed. Appeal was taken to the District Court where trial de novo was had.

The evidence of proponents is to the effect that Minnie S. Dyer at the date of the making of the will on November 14, 1940, was an old lady over seventy years of age; that she had three daughters, Mildred, the proponent of the will, Reba and Johnnie Mae, the contestants, and a son, Travis, all living; that a certain attorney in Mangum where deceased lived had represented her in a law suit filed in Greer County and in certain other minor matters; that on the date of the will, November 14, 1940, Mrs. Dyer came alone to the attorney's office and requested him to prepare her will; that the attorney prepared the will incorporating therein the bequests dictated by Mrs. Dyer; after Mrs. Dyer had read and approved the will the attorney took her to the bank across the street, where she did all her business, and there Mrs. Dyer asked the cashier and the president to witness her will; that the attorney asked Mrs. Dyer if that was her will, if she had read it, and if the provisions therein were in accord with her desires and she replied in the affirmative; that she then signed the will in the presence of the two subscribing witnesses, then asked the witnesses to sign which they did in her presence and in the presence of each other; that Mrs. Dyer then gave the will to the attorney and asked him to keep it for her; that the will had remained in his files from that day until it was offered for probate on June 18, 1953; that Mrs. Dyer died on May 10, 1953; the will, which was introduced in evidence, bequeathed to her daughters Reba and Johnnie Mae, contestants herein, each one dollar, stating that the reason for so doing was that said daughters had made testatrix' old age miserable with law suits and efforts to take the management of her property away from her; the will bequeathed to her son, Travis, the sum of one dollar for the reason that he had sufficient property of his own and was able to take care of himself; and bequeathed and devised all the rest and residue of her property, both real and personal, to her daughter, Mildred, proponent of the will; the two subscribing witnesses testified that while they had no independent personal recollection of the signing of the will or the circumstances surrounding same they would not have signed the will as attesting witnesses if Mrs. Dyer had not been present and signed the will in their presence; the attorney who prepared the will testified that after Mrs. Dyer's death her son Travis asked him to tear the will up but he refused and told Travis he had the will and, as Travis was named executor in the will, he would give the will to Travis if Travis would offer it for probate but Travis refused; that thereafter the attorney got Mildred Keller to offer the will for probate.

Contestants' evidence reasonably tends to show that Mrs. Dyer depended upon her son, Travis, to handle all of her business; that on the date of the execution of the will Travis had the attorney draw up the will and a farm lease; that he took the lease and the will out to the farm home of Mrs. Dyer near Mangum; that he had Mrs. Dyer and the tenant on the farm sign the farm lease, then had Mrs. Dyer sign the will; that Travis then brought the tenant to town to the bank where the tenant paid $50 down on the rental on the farm for the next year, which sum Travis deposited in Dyer's account, and Travis asked the two bank officials to witness Mrs. Dyer's signature, with which they were familiar, on both the lease and the will; that Mrs. Dyer was not present when the purported will was drafted, knew nothing of its contents, did not know what she was signing when her son had her sign it, and that she did not sign it in the presence of the subscribing witnesses nor did the subscribing witnesses sign it in her presence.

Upon rebuttal the subscribing witnesses again testified that they knew the will was executed in the manner stated in the attestation clause because they would never have signed the instrument otherwise; that they knew that when asked to be a witness to a will that they might have to testify about it in court later and that they never signed any paper without reading it first and they would never sign as witness to a will unless the testator was present and asked them to sign.

The District Judge found that the evidence preponderated in favor of proponent; that the will was executed according to statute and that the will was a valid and subsisting will and should be admitted to probate and rendered judgment in accordance with such findings, and sustained the order of the county court admitting the will to probate and appointing administrator with the will annexed. From order overruling motion for new trial contestants appeal.

Contestants urge that the burden of proof rests upon the proponent of a will to establish by a preponderance of the evidence that the will was executed and published according to the provisions of the statute, citing In re Stover's Will, 104 Okl. 251, 231 P. 212, and McCarty v. Weatherly, 85 Okl. 123, 204 P. 632; that at most the testimony of proponents does no more than establish a prima facie case of execution.

There is no question that Mrs. Dyer and the two subscribing witnesses signed the will. No one denies this. The evidence of proponent on the question of execution is that while the two subscribing witnesses had no independent recollection of the circumstances surrounding the signing of the will some thirteen years before they would not have signed as attesting witnesses if testatrix had not been present and signed the will in their presence and requested them to sign in her presence and the presence of each other as recited in the attestation clause. The attorney who drafted the will and in whose possession the will was left for safekeeping testified positively that the will was executed in his presence in the manner recited in the attestation clause. On the other hand, the evidence of contestants is that she signed the will at her farm home and that her son then brought the will into town and procured the signatures of the subscribing witnesses. If the will was executed in the manner indicated by proponent's witnesses the will was executed as prescribed by law and subject to probate. If executed as described by contestants' evidence it was not. The evidence is in direct conflict on the point.

In the case of In re Will of Stires (Looman v. Carder), 92 Okl. 276, 219 P. 695, in the face of conflicting evidence as to the genuineness of testator's signature and as to whether the will was signed in the presence of the subscribing witnesses, it was held that the testimony of one subscribing witness that the other witness was dead; that he was familiar with the signature of the other subscribing witness and with the signature of deceased; that the signatures were genuine; that he signed the will as witness; that he did not remember the occasion but that he would not have signed the will if the testator and the other subscribing witness had not been present and if the testator had not signed the will in his presence and had not requested him to sign as a witness and had not declared it to be his last will and testament, was sufficient proof of the execution of the will.

In the case of Moore v. Glover, 196 Okl. 177, 163 P.2d 1003, where the evidence was conflicting as to whether the attesting witnesses signed in the presence of the testatrix, we held that the finding of the trial court on such issue would not be disturbed unless such finding was clearly against the weight of the evidence.

In this case the trial court found that the will was valid and was executed according to the statute. We cannot say that the trial court's finding in this regard is clearly against the weight of the evidence.

As to undue influence, contestants claim that the testimony of testatrix' son, who did not benefit under the will, to the effect that he took the will to his mother and had her sign it which she did without knowing its contents, shows that the will was not that of the testatrix but the will of the son. This is all the evidence introduced on the question of undue influence. The subscribing witnesses testified to a materially different state of facts. There inheres in the judgment of the court a finding that there was no undue influence, and we cannot say as a matter of law that such finding is clearly against the weight of the evidence.

Contestants also urge that the court erred in excluding evidence to the effect that in 1950 or 1951, long after the execu

tion of the will, Mrs. Dyer on one or more occasions stated that her property was in a run down condition but in the normal course of events she would not be here very long anyway, that the property would go to the children equally which was her desire and they could do whatever they wanted to about it. They urge that such evidence was competent to prove the intention of the testatrix. Such evidence at most could only show one of two things; that she may have been considering changing the terms of her will; if so, she never carried such intention into effect; or that she had made a new will; if so, it had never come to light. Such evidence is without value in determining the question presented here, that is, whether the will was executed according to law and whether it was the will of the testatrix at the time of its execution, and its exclusion was harmless error.

Affirmed.

WILLIAMS, V. C. J., and WELCH, CORN, DAVISON, HALLEY, and BLACKBIRD, JJ., concur.